**Edward FULLER, Executor of the Estate of Isabelle J. BOND**

vs.

**Lyman FLANDERS, CHARLSTON SAVINGS BANK, and LIBERTY BANK AND TRUST COMPANY**

**No. 43928**

Superior Court/Suffolk County
Commonwealth of Massachusetts

**May 17, 1982**

**John T. Foynes,** counsel for plaintiff.
**Elizabeth C. Claggets,** counsel for Home Savings Bank.
**Robert M. Bonin,** counsel for Liberty Bank & Trust Co.

## FINDINGS, RULING, ORDER AND MEMORANDUM OF DECISION ON THE DEFENDANT LIBERTY BANK'S MOTION FOR SUMMARY JUDGMENT

### Introduction

This action is currently before this court on the defendant Liberty Bank and Trust Company's ("Liberty") motion for summary judgment with respect to the plaintiff executor's claims against it. In sum, the plaintiff's complaint claims that Liberty was negligent and lacked authority in paying out monies from the estate of Isabelle Bond to the defendant Flanders. Flanders had obtained those monies by forging the plaintiff's signature on instruments and then by withdrawing monies from the plaintiff executor's account with Liberty via the forged instruments all as more fully set out below. Liberty has moved for summary judgment on the grounds that the plaintiff is precluded as a matter of law from asserting its claims against it for the reason that the plaintiff failed to notify Liberty of Flanders' withdrawals within one year, as required by G.L.c. 106, sec. 4-406, from the time statements of account "were made available" to the plaintiff by Liberty. The plaintiff responds that such statements were not made available to him because they were never sent to him and that he filed the complaint which commenced this action within six months after Flanders' defalcations became known to him and thus the time limits set out in G.L.c. 106, sec. 4-406 do not bar his claim. The plaintiff requests that summary judgment be granted for him against Liberty on the issue of liability for Liberty's honoring forged instruments drawn on the plaintiff's account with Liberty.

### Findings

From the pleadings, affidavits and other papers filed in this action, the facts material and relevant to the relief sought by Liberty in its motion for summary judgment are as follows: On May 19, 1977 one Isabelle Bond died. In accordance with Bond's prior request, Flanders acted as attorney for her estate and, pursuant to instructions in Bond's will, the plaintiff was appointed executor of her estate. Thereafter, Flanders obtained blank signature cards from several banks, including Liberty, where there existed accounts which had funds deposited in Bond's name. At some point at Flanders' request the plaintiff turned over the checkbook for Bond's checking account at Liberty to Flanders as attorney for the estate. Also at Flanders' request the plaintiff then signed the signature cards Flanders had obtained including a signature card for the Liberty account. That card indicated that the account is in the name of "Estate of Isabelle J. Bond" which is set out at the top of the card. Below that are spaces for two addresses. In the first space is the plaintiff's home address as he wrote it, and below it are the words "Mailing address c/o Lyman L. Flanders, 73 Tremont Street, Boston, MA 02108" which Flanders wrote in. The plaintiff signed that card "in blank" at Flanders' request before Flanders wrote in his office address. The plaintiff was not present when Flanders opened the Liberty account in September, 1977. There has been no indication of what Liberty's practice was and is concerning the opening of estate accounts where more than one person's name, address and handwriting appear on a signature card.

With the exception of one check dated September 29, 1977, which the plaintiff obtained as an advance on his legacy from Bond, the plaintiff signed no other checks drawn on the Liberty estate account. From August, 1977 to September, 1978 Flanders depleted the Liberty estate account by forging the plaintiff's signature on checks and then withdrawing substantial sums of money from it. Relying on Flanders to administer Bond's estate and to pay the normal expenses of the estate, the plaintiff never communicated with Liberty nor inquired of Flanders as to the status of the Liberty account nor did he ever request an accounting. Flanders received monthly bank statements from Liberty at his office address and he never showed them to the plaintiff. Relying on an indication on the

signature card that the address on the Liberty signature card that the mailing address for the estate was Flanders' office address Liberty sent all montly statements in connection with the account to Flanders. Liberty never contacted the plaintiff before sending out the statements. The plaintiff first learned that something was wrong in January, 1980, when he received a notice that Flanders had been suspended from the practice of law as of January 17, 1980. The plaintiff then retained new counsel. The plaintiff first learned of any misappropriation of the estate's funds through forgeries in March, 1980 when his new counsel learned of the same.

## Rulings and Memorandum of Decision

Mass. R. Civ. P. 56 provides that summary judgment shall be "rendered forthwith if the pleadings...together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The merits of this action are governed by G.L.c. 106, sec. 4-406 of the Uniform Commercial Code which provides in relevant part as follows:

Sec. 4-406. Customer's Duty to Discover and Report Unauthorized Signature or Alteration. (1) When a bank sends to its customer a statement of account...or otherwise in a reasonable manner makes the statement...available to the customer, the customer must exercise reasonable care and promptness to examine the statement...to discover...his unauthorized signature...and must notify the bank promptly after discovery thereof...

(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement...is made available to the customer (subsection (1) discover and report his unauthorized signature...is precluded from asserting against the bank such unauthorized signature...

Liberty argues that it should be granted summary judgment as a matter of law because G.L.c. 106, sec. 4-406(4) bars claims against a bank where its customer fails to report an unauthorized signature within one year from the time when statements are made available to the customer. Liberty claims that sec. 4-406(4) amounts to an absolute time bar to recovery by the plaintiff. Liberty cites several cases in support of its position that the depositor is charged with a positive duty to examine a bank's statements and is charged with the knowledge which would be available to a reasonable and prudent person even when that person is the customer's agent engaged in wrongdoing. However, those cases go to the issue of care or lack of care on the part of the customer which may then preclude liability if the bank can show no negligence on its part. UCC sec. 4-406(2) and (3).

This action, in my opinion, turns on UCC sec. 4-406(4) which becomes operative setting up a limit without regard to care or lack of care once the statement of account is made reasonably available to the customer. In this action, it is the availability of the bank statements that is at issue. Section 4-406(4) makes reference to subsection (1) in connection with the language and making available to the customer. Subsection (1) indicates that making a statement available to a customer includes the situations when a bank sending the statement "to its customer," holding the statement "pursuant to a request for instructions of its customer," and "otherwise in a reasonable manner making the statement...available to the customer." Comment 1 to Subsection (1) states that "sending" falls within the definition of "send" defined in section 1-201 and this includes mailing to the customer's address. The second situation of holding the statement is inapplicable here. In the third type of situation of "otherwise in a reasonable manner making available"

must be found to reasonable and "any court has the power to determine that a particular action or practice of a bank, other than sending statements and items or holding them pursuant to instructions, is not reasonable." Comment 1.

In this action the question to be decided is did Liberty make the statements available in a reasonable manner to the customer, here an executor of an estate, by sending the statements to his attorney without notice or copies to the customer when there were two different handwritings on the signature card especially when the account was an estate account. In this action, answering those questions of what is reasonably making available is in my opinion a mixed question of fact and law. The issue is essentially who should bear the burden of misplaced trust in a person acting in a fiduciary like position, and whether the Liberty's action in this case is not sending a notice or a copy to the depositor where two persons were named on an estate account was making the statements reasonably available. Again no evidence has been introduced of the bank's normal practice in such a situation.

Questions of mixed law and fact are usually inappropriate for summary judgment. The Appeals Court held in **Lurensky v. Merchants Beef Co.,** 1980 Mass. App. Ct. Adv. Sh. 1403, that summary judgment was not appropriate where the effect of affidavits was to "create ultimate questions of fact on which reasonable minds could differ concerning the propriety and reasonableness of the corporate expenditure and practices which are challenged." The Court has found questions of reasonableness, or questions of whether a particular factual situation violated or met the standards of the law, to be triable issues as questions of fact. In **Scott v. Franklin County Technical School,** 1979 Mass. App. Ct. Adv. Sh. 164, an action for breach of contract, the Court found that the question of whether an omission constituted a substantial deviation from the terms of the contract was a factual issue to be resolved at trial rather than at the summary judgment stage.

This action presents a similar question. Did the action taken by Liberty Bank constitute making the statements reasonably available to the customer in light of the particular circumstances of this case? As such, the question to be determined is one of reasonableness, a question of fact most appropriately decided at trial.

Although Comment 5 to sec. 4-406(4) indicates that "subsection (4) places an absolute time limit on the right of a customer to make claim for payment of altered or forged paper without regard to care or lack of either customer or bank...the balance in favor of a mechanical termination of the liability of the bank outweighs what few residuary risks the customer may still have," in this action the time limit cannot be said to bar plaintiff as a matter of law because it does not become operative until the statements are made available in a reasonable manner to the depositor. In this case that question must be determined as a matter of fact and law and thus this action is not ripe for summary judgment.

**Order**

For the reason set out above, summary judgment for both parties is ordered denied.

**Paul G. Garrity**
**Justice of the Superior Court**